**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| In re:<br><br>AMRIK S. PABLA<br>and<br>DALWINDER KAUR PABLA<br><br>Debtors | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Chapter 7<br>Case No. 19-12399-CJP |

**MEMORANDUM OF DECISION**

Before the Court are four motions (the "Motions") filed by the joint debtors, Amrik S. Pabla and Dalwinder Kaur Pabla ("Mr. Pabla" and "Mrs. Pabla," respectively), seeking to avoid judicial liens against real property, a multi-unit building located at 309 Beacon Street in Somerville, Massachusetts (the "Somerville Property"). Each Motion addresses a different judicial lienholder.[1] Three of the Motions seek to avoid judicial liens against only Mr. Pabla's interest in the Somerville Property, and the remaining Motion seeks to avoid a judicial lien against only Mrs. Pabla's interest. Only one Motion is opposed. Because addressing that opposition could involve issues common to the consistent disposition of each Motion, I will address the Motions together. For the reasons discussed below, none of the judicial liens are avoidable, and all of the Motions will be denied.

---

[1] Specifically, the Motions seek to avoid the judicial liens of Jasbir S. Bhogal (Dkt. No. 41), Gurnam Singh (Dkt. No. 42), Disaster Associates, Inc. (Dkt. No. 48), and CACH, LLC (Dkt. No. 61) (collectively cited as "Debtors' Mots."). I will refer to the individual Motions as needed when discussing any Motion's distinct legal or factual issues.

**I.     Background**

Mr. and Mrs. Pabla jointly filed a petition under Chapter 7 of the Bankruptcy Code on July 16, 2019 (the "Petition Date").[2] Among their assets, they listed interests in two real properties in Middlesex County: the Somerville Property and a single-family home at 32 Solomon Pierce Road in Lexington (the "Lexington Property"). See Sch. A/B, Dkt. No. 12; Am. Sch. A/B, Dkt. No. 67.[3] It appears that the Pablas own the Somerville Property as tenants by the entirety and own the Lexington Property jointly with relatives.[4] See Sch. A/B; Am. Sch. A/B. Although they listed the Lexington Property on their bankruptcy petition as the address where they then lived, the Pablas claimed a $500,000 homestead exemption under state law in the Somerville Property. See Pet. 2, Dkt. No. 1; Sch. C, Dkt. No. 12; Am. Sch. C, Dkt. No. 67. There have been no objections to the claimed exemption.

---

[2] Unless otherwise noted, all section references herein are to Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, as amended (the "Bankruptcy Code" or "Code").

[3] Mr. and Mrs. Pabla filed their original bankruptcy schedules (Dkt. No. 12) a few weeks after the Petition Date. They later amended certain schedules, including Schedules A/B and C (Dkt. No. 67), after they filed their Motions. The original and amended schedules are both cited herein to acknowledge the fact of amendment. The amendments, however, are not germane to the issues discussed in this memorandum.

[4] Although pertinent to their Motions, Mr. and Mrs. Pabla do not describe the nature of their ownership interest in the Somerville Property, which is also identified as "309-311 Beacon Street" in certain recorded documents. See Sch. A/B; Am. Sch. A/B; Debtors' Mots. ¶ 2, Ex. C. On their schedules, they state that the Somerville Property was "purchased in 1994 by Mr. Pabla and his brother Jaswinder Pabla" and that "Jaswinder transferred the property to [Mr. and Mrs. Pabla] via deed dated March 20, 2014." See Sch. A/B; Am. Sch. A/B. Based on references to and copies of other deeds attached to their Motions, it appears that there were intervening transfers before the March 2014 deed, of which no copy appears to have been provided. In any event, for the purposes of this memorandum, I assume that they each held ownership interests in the Somerville Property when any judicial lien in question fixed upon their respective interests. Further, because the Pablas have not disputed the assertion, in the opposition discussed below, that they own the Somerville Property as tenants by the entirety, I assume that to be the nature of their ownership interest for purposes of addressing their Motions.

The Pablas later filed the Motions to avoid judicial liens under § 522(f), asserting that each lien impairs the claimed exemption such that the liens can be entirely avoided. In the Motions, the Pablas state that the Somerville Property is their residence.[5] Debtors' Mots. ¶ 2. They assert that, as of the Petition Date, the Somerville Property's fair market value was $2,229,141. *Id.* ¶ 3. In addition to judicial liens, which are discussed in more detail below, the Somerville Property is encumbered by other liens that are not avoidable under § 522(f), including federal, state, and city statutory liens and a mortgage given by Mr. and Mrs. Pabla that was recorded at the Middlesex County Registry of Deeds in 2005. *See* Debtors' Mots. ¶ 6 & n.2 (incorporating balance due as alleged in mortgagee's stay relief motion); Mortgagee's Stay Relief Mot. ¶¶ 2, 5, Dkt. No. 16; Mortgagee's Stay Relief Mot. Ex. A, Dkt. No. 16-1.

Gurnam Singh filed an opposition to the Motion addressing the judicial lien securing his asserted claim. *See* Singh Opp'n, Dkt. No. 75; Singh Opp'n Supp., Dkt. No. 81. Mr. and Mrs. Pabla replied to that opposition. Debtors' Reply, Dkt. No. 84. After a telephonic conference on the opposition, Mr. and Mrs. Pabla were directed to supplement that Motion to address certain issues raised during the conference, which they did. *See* Order, Dkt. No. 118; Debtors' Supp., Dkt. No. 127. Mr. Singh then filed a further response. Singh Resp. to Debtors' Supp., Dkt. No. 128. Having considered those pleadings, the record in this case, and the arguments of counsel, I address the four Motions below. *See* Orders, Dkt. Nos. 118, 123 (indicating that Motions would be addressed together).

---

[5] About a month after the Motions were filed, Mr. and Mrs. Pabla filed a statement of change of address, listing the Somerville Property as their new address. *See* Debtors' Statement, Dkt. No. 83. Although it appears that Mr. and Mrs. Pabla might not have occupied the Somerville Property as their principal residence when they recorded their homestead declaration, it would be sufficient for purposes of claiming the exemption under state law that they intended to occupy it as their principal residence. *See* Mass. Gen. Laws ch. 188, §§ 1, 3. As noted above, no party in interest objected to the claimed exemption.

**II.      Legal Standard**

Upon the filing of a voluntary bankruptcy petition, an estate is created that includes a debtor's legal and equitable interests in real property, among other property interests. *See* 11 U.S.C. §§ 301-302, 541(a)(1). To preserve certain assets for the debtor's financial fresh start after bankruptcy, a debtor is permitted to exempt certain property from being included as property of the bankruptcy estate. *See* 11 U.S.C. § 522(b); *see also id.* § 522(*l*) (providing that property scheduled as exempt is exempt, absent a party in interest's sustained objection); Fed. R. Bankr. P. 4003 (establishing exemption-related procedures). Consequently, exempt property is not distributed to the debtor's unsecured creditors, but secured creditors' liens against the debtor's interest in such property remain intact. *See Farrey v. Sanderfoot*, 500 U.S. 291, 297 (1991).

"[T]o prevent unsecured creditors from bypassing exemptions simply by converting their claims into judicial liens and obtaining security interests in otherwise exempt property," Congress included § 522 in its 1978 enactment of the Bankruptcy Code, a provision permitting debtors to avoid certain judicial liens that would otherwise limit or impair an exemption. *Nelson v. Scala*, 192 F.3d 32, 33-34 (1st Cir. 1999); *see also* 11 U.S.C. §§ 101(36)-(37) (defining "judicial lien" and "lien," respectively), 522(f)(1) (specifying avoidable lien types).[6] A debtor bears at least the initial burden of establishing that a judicial lien is avoidable under § 522. *See Premier Cap., Inc. v. DeCarolis (In re DeCarolis)*, 259 B.R. 467, 471 (B.A.P. 1st Cir. 2001); *Catli v. Catli (In re Catli)*, 999 F.2d 1405, 1406 (9th Cir. 1993).

---

[6] Apart from any judicial lien that was satisfied prepetition, *see infra* Part III(a)(i), the judicial liens addressed in this memorandum are generally of the type that could be avoidable under § 522(f).

To clarify the extent to which such non-consensual liens could be avoided in order to preserve a debtor's exemption, Congress amended § 522 in 1994 to include an arithmetic formula to determine impairment:

> For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of—
>
> (i) the lien;
> (ii) all other liens on the property; and
> (iii) the amount of the exemption that the debtor could claim if there were no liens on the property;
>
> exceeds the value that the debtor's interest in the property would have in the absence of any liens.

11 U.S.C. § 522(f)(2)(A); *Nelson*, 192 F.3d at 33. The amendment derived from Congress's dissatisfaction with certain decisions interpreting § 522(f). *Nelson*, 192 F.3d at 35 (citing H.R. Rep. No. 103-835, 52-54 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3361-63).[7]

The formula works as intended by Congress—preserving a debtor's exemption—when the debtor is the sole owner of the property. It also appears to work in most instances as intended when joint debtors are the only co-owners of a property and have the same debt obligations secured by that property. The formula does not work as intended, however, when joint debtors co-own a property but have asymmetrical debt obligations secured by that property. *Nelson*, 192 F.3d at 34-36.[8] As an example of asymmetry, the interests of joint debtors who co-

---

[7] The cited Report notes that the formula was based upon a decision that had been favorably cited by the United States Supreme Court—*In re Brantz*, 106 B.R. 62 (Bankr. E.D. Pa. 1989)—and was intended to overrule decisions in at least four scenarios. As noted in *Nelson*, each scenario described in the Report "in some fashion impaired an exemption or an exempt interest in property to the disadvantage of the debtor; and in none did the scenario resemble that presented by [the relevant debtor in *Nelson*]." *Nelson*, 192 F.3d at 35. Likewise, none of the described scenarios are similar to that of Mr. and Mrs. Pabla and thus need not be considered here.

[8] Other courts discussing scenarios in which the formula fails to work as intended have generally identified circumstances involving property co-owners who have asymmetrical debt obligations or who may not be in bankruptcy together as joint debtors. *E.g.*, *William F. Sandoval Irrevocable Tr. v. Taylor (In re Taylor)*, 899 F.3d 1126, 1127-28, 1130-31 (10th Cir. 2018), *abrogating Zeigler Eng'g Sales, Inc. v.*

5

own a property may be subject to a mortgage (or other liens that cannot be avoided under § 522(f)), but only one of the debtors' interest is subject to a judicial lien. In such circumstances, if the formula were to be applied literally, it could result in a lien avoidance that exceeds Congress's intent of preserving a debtor's exemption and unintentionally disadvantages the lienholder. *Nelson*, 192 F.3d at 34-36. The literal application of the formula could dictate that a judicial lien is avoidable in its entirety where a debtor has sufficient equity to cover some or all of the lien while still preserving that debtor's full exemption.

In *Nelson v. Scala*, the United States Court of Appeals for the First Circuit determined that to avoid such "an injustice" to the lienholder under those narrow circumstances, a court may deviate from the literal application of the formula in § 522 and, instead, apply an alternate formula that "achieves Congress's aim to protect in full (but only in full) [the debtor's] exempt interest in [the property]." *See Nelson*, 192 F.3d at 36 ("In these circumstances, we think that the departure from literal language—always a step to be taken with hesitation—is nevertheless well justified."). The alternate formula starts with the property's total fair market value as of the petition date. *See Nelson*, 192 F.3d at 33-34, 36; *Premier Cap., Inc. v. Pagnini (In re Pagnini)*, 433 B.R. 455, 459 (B.A.P. 1st Cir. 2010); *see also* 11 U.S.C. § 522(a)(2) (defining "value" for purposes of § 522). All joint unavoidable liens (e.g., consensual debt and statutory liens) as of the petition date are subtracted from the total value of the property to determine what the overall equity would be if there were no other liens. *See Nelson*, 192 F.3d at 33-34, 36; *Pagnini*, 433 B.R. at 459 & n.6. The amount of that equity is then allocated to each owner based upon the

---

*Cozad (In re Cozad)*, 208 B.R. 495 (B.A.P. 10th Cir. 1997); *Miller v. Sul (In re Miller)*, 299 F.3d 183, 185-87 (3d Cir. 2002); *Lehman v. VisionSpan, Inc. (In re Lehman)*, 205 F.3d 1255, 1255-58 (11th Cir. 2000) (per curiam); *All Points Cap. Corp. v. Meyer (In re Meyer)*, 373 B.R. 84, 85-86, 89-91 (B.A.P. 9th Cir. 2007); *In re Heaney*, 453 B.R. 42, 46-47 (Bankr. E.D.N.Y. 2011).

owner's interest in the property.  *See Nelson*, 192 F.3d at 33-34, 36; *Pagnini*, 433 B.R. at 459. Having determined the amount of equity attributable to a specific debtor, the court can consider the extent to which a judicial lien against only that debtor's interest is avoidable.  To preserve the debtor's exemption as intended, the amount of that debtor's exemption is then subtracted from the debtor's share of the equity.  *See Nelson*, 192 F.3d at 33-34, 36; *Pagnini*, 433 B.R. at 459.  To the extent any portion of that equity remains, it is not exempt and, thus, is subject to a judicial lien against that debtor's interest to the extent of the remaining equity amount because the judicial lien would not impair the debtor's exemption.  *See Nelson*, 192 F.3d at 33-34, 36; *Pagnini*, 433 B.R. at 459.  Such a judicial lien would be avoidable, in part or entirely, only to the extent that the judicial liens impaired the debtor's exemption, or, put another way, to the extent that the judicial liens could not be paid from any nonexempt equity.[9]  *See Nelson*, 192 F.3d at 33-34, 36; *Pagnini*, 433 B.R. at 459.

---

[9] In *Nelson*, the First Circuit recognized that the bankruptcy court and district court had each reached the same result using different mathematical steps.  As the *Nelson* Court observed in affirming that result, "it is possible to adjust for th[e] asymmetry" by using different mathematical steps, but the same steps might not "work in every variant case."  *See Nelson*, 192 F.3d at 36.  In selecting the specific steps, the overall goal of achieving Congress's aim remains the same.  *See id.*  The bankruptcy court in *Nelson* applied the alternate formula described above, which is one that tracks well with the one applied in *Brantz* upon which Congress based the statutory formula.  *See Nelson v. Scala (In re Nelson)*, 229 B.R. 262, 264-66 & n.3 (D. Me. 1998), *aff'd sub nom. Nelson v. Scala*, 192 F.3d 32 (1st Cir. 1999) (providing formulas); *supra* note 7.  As the bankruptcy court's steps in *Nelson* have since been used by other courts in similar circumstances, I see no reason to deviate from those steps here.  *See Pagnini*, 433 B.R. at 459; *In re Drew*, No. 11-16612-WCH, 2011 WL 4915006, at *2-3 (Bankr. D. Mass. Oct. 17, 2011); *see also Lehman*, 205 F.3d at 1256-58 (affirming bankruptcy court's similar *Brantz*-based "common sense approach" to avoid "produc[ing] an absurd result" under statutory formula's literal application, which would have provided "a windfall" to debtor in terms of preserving debtor's equity and, in turn, would have "violate[d] the Congressional intent").  I also find no reason to delve into the different mathematical steps used by the district court in *Nelson*, as the use of those steps would not alter the result here.

**III.     Discussion**

The Motions have certain factual allegations in common. Each Motion asserts that the fair market value of the Somerville Property is $2,229,141.00.[10] Debtors' Mots. ¶ 3. Each Motion asserts that the Somerville Property is encumbered by unavoidable liens totaling $862,255.78 ($580,172.74 for a first mortgage and $282,083.04 in overall city, state, and federal statutory liens) and appears to assert that both Mr. and Mrs. Pabla are jointly liable for these debts.[11] *See id.* ¶¶ 6-7. Finally, each Motion asserts that, based upon state law and a homestead declaration recorded a few weeks before filing their bankruptcy petition, Mr. and Mrs. Pabla collectively claim a $500,000 exemption in the Somerville Property. *See id.* ¶¶ 3, 15 & Ex. C; *see also* Sch. C, Dkt. No. 12 (citing Mass. Gen. Laws ch. 188, §§ 1, 3 for homestead exemption); Am. Sch. C, Dkt. No. 67 (same).

As noted, each Motion relates to a different judicial lienholder and asserts that each judicial lien in question is against only either Mr. Pabla's interest or Mrs. Pabla's interest in the Somerville Property that they own together as tenants by the entirety. Although each Motion

---

[10] On their schedules, the Pablas assert that a February 2019 comparative market analysis served as the basis for the Somerville Property's stated fair market value. Sch. A/B; Am. Sch. A/B. That analysis would have been about five months before the Petition Date. In their Motions, they assert the same fair market value and reference an attached "summary page of a recent appraisal." Debtors' Mots. ¶ 3. The summary page appears to be from a comparative market analysis or broker's price opinion. *See* Debtors' Mots. Ex. A. It is undated, and no author or preparer is identified. *See id.* It provides an estimated sale price range of $2,229,141 (matching Mr. and Mrs. Pabla's schedules) to $2,343,456. *Id.* It provides no other substantive information but indicates that an error prevented additional information from being displayed. *See id.* Because Mr. and Mrs. Pabla's assertion of fair market value as of the Petition Date is undisputed, I accept that value for the purposes of this decision.

[11] Mr. and Mrs. Pabla explain that the mortgage amount alleged is based on the mortgagee's September 2019 stay relief motion, which asserted an amount about $35,000 higher than the amount stated on Mr. and Mrs. Pabla's schedules. The statutory lien amounts asserted appear to be a mix of amounts scheduled for the corresponding liens and amounts asserted in proofs of claim filed in this case, but they cannot clearly be reconciled. These discrepancies need not be resolved, however, because using the amounts most favorable to the Pablas does not change the analysis or my decision.

involves asymmetrical debt obligations purportedly secured by the Sommerville Property, the Pablas used a near literal application of the statutory formula.[12] To achieve Congress's intent of protecting the full amount of the Pablas' claimed exemption, but no more, I will apply an alternate formula consistent with *Nelson* to determine whether the judicial liens at issue may be avoided under § 522(f).

### a.    Judicial Liens Against Mr. Pabla's Interest

Three of the Motions relate to the avoidance of liens attaching only to Mr. Pabla's interest in the Somerville Property.[13]

### i.    Bhogal

Mr. and Mrs. Pabla seek to avoid two judicial liens of Jasbir S. Bhogal against Mr. Pabla's interest in the Somerville Property.  Debtors' Bhogal Mot., Dkt. No. 41.  Per their Motion, the liens stem from a June 2011 recorded state court writ of attachment in the amount of $237,425.73 followed by a December 2012 civil judgment in the same matter against Mr. Pabla and other non-debtors in the amount of $336,357.39.  *Id.* ¶¶ 9-11 & Ex. D.  A writ of execution in the judgment amount was issued and recorded with the Registry of Deeds in March 2013.  *Id.* ¶¶ 9-10, 12 & Ex. D.  The two recorded documents reflect that a deputy sheriff attached and later levied execution upon Mr. Pabla's interest in the Somerville Property and the Lexington Property.[14]

---

[12] Although § 522(f)(2)(A)(ii) includes "all other liens on the property" in the formula, Mr. and Mrs. Pabla did not include all other relevant judicial liens in their calculations in each Motion.  Had they properly done so, however, the ultimate conclusions reached in this memorandum would not be different.

[13] Lien priority is often a factor in the avoidance of multiple liens, with liens generally to be avoided in the reverse order of priority under state law.  Here, as will become evident below, lien priority is not a factor that would affect the outcome and is not addressed.

[14] To the extent that any judicial liens are against Mr. Pabla's interest in the Lexington Property, they

The Pablas did not list any debt to Mr. Bhogal on their schedules of liabilities. *See* Scheds. D & E/F, Dkt. No. 12; Am. Scheds. D & E/F, Dkt. No. 17; Am. Sch. E/F, Dkt. No. 43. In a pleading, the Pablas represented that any debt to Mr. Bhogal was paid through a receivership in or about 2015, several years before the Petition Date. Answer of Defendants to Complaint ¶ 56, *Singh v. Pabla*, Adv. No. 19-01135-CJP (Bankr. D. Mass. Nov. 20, 2019). Thus, "there was no unpaid debt to list on the Schedules." *Id.* Mr. and Mrs. Pabla indicate, however, that they are seeking "to remove the judicial lien [because it] was not discharged at the time the debt was paid." *Id.*

Mr. and Mrs. Pabla have cited no legal authority for their suggestion that a judicial lien associated with a debt that was fully satisfied years before the filing of the bankruptcy petition could impair an exemption such that lien avoidance under § 522(f) would be appropriate. For purposes of § 522(f), "the Bankruptcy Court must calculate the value of the lien as of the filing of the petition" and "[i]f the lien 'impairs' the exemption on that date, the court may thereafter address whether the lien should be avoided." *Wilding v. CitiFinancial Consumer Fin. Servs., Inc. (In re Wilding)*, 475 F.3d 428, 432-33 (1st Cir. 2007) (concluding that "petition date is the operative date for determining the various § 522(f) calculations" and thus permitting debtor to avoid judicial lien that had been satisfied after petition date but before motion to avoid lien had been filed); *see also* MLBR 4003-1(a)(3) (requiring judicial lien avoidance motion to state judicial lien amount as of petition date). In their Motion, rather than stating the value of Mr. Bhogal's judicial liens as of the Petition Date, Mr. and Mrs. Pabla state the face value of those

---

would not be avoidable under § 522(f) because no exemption has been claimed in that property. Similarly, to the extent that any judicial liens are against a non-debtor's interest in either property (such as Mr. Pabla's brother who appears to have had his interests in the properties attached as well), they would not be avoidable.

10

liens, based upon amounts stated on the writs of attachment and execution. Through their schedules and in pleadings filed with this Court, however, the Pablas have stated that Mr. Bhogal's liens secured no indebtedness as of the Petition Date. Thus, because those liens had no value as of the Petition Date, they cannot be said to impair the Pablas' homestead exemption and, accordingly, cannot be avoided under § 522(f).[15] Therefore, I will deny Mr. and Mrs. Pabla's Motion to avoid Mr. Bhogal's judicial liens.

### ii.    CACH, LLC

Mr. and Mrs. Pabla seek to avoid a judicial lien of CACH, LLC, to the extent that it constitutes a lien against Mr. Pabla's interest in the Somerville Property. Debtors' CACH Mot., Dkt. No. 61. As alleged in their Motion, the lien stems from an October 2011 state court civil judgment against Mr. Pabla in the amount of $2,795.75. *Id.* ¶¶ 9-10 & Ex. D. A writ of execution in the same amount was issued in February 2012 and recorded with the Registry of Deeds in March 2012.[16] *Id.* ¶ 11 & Ex. D.

As Mr. and Mrs. Pabla recognize in the Motion, the recorded document reflects that a deputy sheriff levied the execution upon Mr. Pabla's interest in *only* the Lexington Property, a property that they have not exempted. *See id.* ¶ 11 n.4 & Ex. D. Because the Lexington Property and the Somerville Property are both in Middlesex County, the Pablas are nevertheless

---

[15] This is not to suggest that Mr. and Mrs. Pabla cannot clear their property's title as to Mr. Bhogal's apparently valueless liens through other legal proceedings. Section 522(f), however, is not the appropriate mechanism for discharging a lien that has been fully paid prior to the Petition Date.

[16] No debt to CACH is listed on the Pablas' schedules of liabilities, raising questions about whether, like the debt to Mr. Bhogal, any debt owed to CACH was paid before the Petition Date. In their Motion, Mr. and Mrs. Pabla have provided "[t]he face amount of the Judicial Lien as of February [1]5, 2012"—the date that the writ of execution was issued, rather than stating the lien's value as of the Petition Date, as required. *See* Debtors' CACH Mot. ¶¶ 10-11 & Ex. D; MLBR 4003-1(a)(3). For purposes of this memorandum, because it would not alter the ultimate determination that this lien cannot be avoided, I assume without deciding that the lien's face amount was its value as of the Petition Date and that a debtor could avoid a lien that stems from an unscheduled debt.

"requesting the avoidance of lien on [the Somerville Property]" but not the Lexington Property. *Id.* ¶ 11 n.4. Mr. and Mrs. Pabla do not cite legal authority supporting this request. *See id.* They do not explain how this lien affects the Somerville Property or could be said to impair an exemption in that property, and this is not apparent from the face of the recorded document. As shown below, however, even if CACH's judicial lien were found to encumber Mr. Pabla's interest in the Somerville Property, it would not be avoidable because, after accounting for the unavoidable liens, Mr. Pabla has sufficient equity in the Somerville Property such that the judicial lien would not impair his full exemption. For these reasons, I will deny Mr. and Mrs. Pabla's Motion to avoid CACH's judicial lien.

### iii. Singh

Mr. and Mrs. Pabla seek to avoid the judicial lien of Gurnam Singh against Mr. Pabla's interest in the Somerville Property.[17] Debtors' Singh Mot., Dkt. No. 42. The lien secures a January 2019 state court civil judgment against Mr. Pabla in the amount of $98,719. Mr. Singh obtained a writ of execution in the amount of $101,479.68 in April 2019. It was recorded with the Registry of Deeds in May 2019, evidencing the levy upon execution on Mr. Pabla's interest in the Somerville Property.[18]

---

[17] Mr. Singh holds this lien individually as a shareholder and on behalf of all the other shareholders of Pavan Restaurant Group, Inc.

[18] With their Motion, the Pablas filed a copy of a writ of execution that was recorded in April 2019, reflecting that the execution had been levied upon Mr. Pabla's interest in the Lexington Property only. *See* Debtors' Singh Mot. Ex. D. As was explained during a telephonic conference on the Motion, to the extent that Mr. Singh's judicial lien was against Mr. Pabla's interest in the Lexington Property, it would not be avoidable because no exemption has been claimed in that property. Counsel to the Pablas then agreed that he would provide evidence of a judicial lien against the Somerville Property, if such lien existed. Counsel did not do so, despite later filing a supplemental brief. Mr. Singh's counsel, however, when responding to the Pablas' supplemental brief, filed a copy of the relevant writ of execution recorded in May 2019 against Mr. Pabla's interest in the Somerville Property. *See* Singh Resp. to Debtors' Supp. Ex. A, Dkt. No. 128-1. I have relied upon this filing in proceeding with my analysis.

Mr. Singh opposes the Motion to avoid his judicial lien. Singh Opp'n, Dkt. No. 75; Singh Opp'n Supp., Dkt. No. 81. The primary focus of his opposition is the manner in which the Pablas apply the § 522(f) formula as to "the value that the debtor's interest in the property would have in the absence of any liens," 11 U.S.C. § 522(f)(2)(A). As noted, the Motion seeking to avoid Mr. Singh's judicial lien addresses a lien against only Mr. Pabla's interest in the Somerville Property. Without citation to legal authority, the Pablas assert that, in applying the § 522(f) formula, the value of Mr. Pabla's interest in the Somerville Property should be only 50 percent of the property's fair market value, representing the "value" of only his interest. *See* Debtors' Mots. ¶ 3 n.1; Debtors' Supp., Dkt. No. 127. Mr. Singh asserts that, because Mr. and Mrs. Pabla own the Somerville Property as tenants by the entirety, state law provides that they have a 100 percent undivided interest in the Somerville Property, and thus, 100 percent of the property's fair market value must be used in the formula, regardless of whether the judicial lien in question is against only one of their interests. *See* Singh Opp'n 1-2 (citing *Snyder v. Rockland Trust Co. (In re Snyder)*, 249 B.R. 40, 44 (B.A.P. 1st Cir. 2000)); Singh Resp. to Debtors' Supp. 1-2, Dkt. No. 128. In response to the opposition, the Pablas assert that their situation is distinguishable from *Snyder* because, in *Snyder*, only one of the tenants by the entirety was a debtor in bankruptcy. *See* Debtors' Supp. 1. They do not explain how this difference matters and do not address the fact that, in *Snyder*, the creditor's lien was against only the debtor's interest, which the Bankruptcy Appellate Panel for the First Circuit concluded must be valued at 100 percent of the property's fair market value for purposes of applying the formula under § 522(f).

If I were to apply the statutory formula literally, this legal argument would be material, and I would have to determine whether to follow *Snyder*. Given Mr. and Mrs. Pabla's

13

asymmetrical debt obligations secured by the Somerville Property and my determination that application of the mathematical steps approved in *Nelson* is appropriate, I do not need to address the *Snyder* issue as suggested by the parties.[19]

Beginning with the property's full fair market value of $2,229,141.00 and subtracting the unavoidable liens totaling $862,255.78 leaves at least $1,366,885.22 in overall equity before any potentially avoidable judicial liens are considered.[20] Assuming for purposes of this analysis only that Mr. Pabla should be allocated only 50 percent of that equity as the "value" of his interest, rather than 100 percent, he would have at least $683,442.61 in equity. Also assuming without deciding that Mr. Pabla should be permitted to claim the entire $500,000 homestead exemption for § 522(f) calculation purposes, rather than a fractional share of that exemption, there would be at least $183,442.61 in nonexempt equity remaining after preserving the full exemption.[21] Such nonexempt equity is more than sufficient to allow for Mr. Singh's

---

[19] Certain reasoning in *Snyder* has been questioned by other courts. *E.g.*, *In re O'Connell*, 334 B.R. 312, 315 n.6 (Bankr. D. Mass. 2005); *In re Minkina*, No. 18-13325-FJB, 2021 WL 3195806, at *3-11 (Bankr. D. Mass. July 28, 2021). *But see In re Drew*, No. 11-16612-WCH, 2011 WL 4915006, at *3 & n.18 (Bankr. D. Mass. Oct. 17, 2011) (applying alternate formula under *Nelson* and according 100 percent of equity to tenancy-by-entirety owner based upon *Snyder*). I have not ruled on the proper approach to value a debtor's interest in property owned as tenants by the entirety and whether to follow the reasoning of *Snyder* in applying the § 522(f) formula. Because application of *Nelson* in this case results in the applicable liens not being avoided, I do not reach those issues.

[20] For purposes of applying the alternate formula, I have used the figures provided by the Pablas in their Motions as to the unavoidable liens total. I note, however, that Mr. Singh has questioned the accuracy of the statutory lien amounts, suggesting that those amounts have been inflated or exaggerated by the Pablas. The figures the Pablas alleged in their Motions and listed on their schedules are more favorable to them because they are higher than, for example, the amounts reflected in proofs of claim filed in their case. Using the higher amounts alleged by the Pablas, none of the relevant liens are avoidable. As such, there is no need to resolve any dispute about whether the statutory liens total less than asserted by the Pablas.

[21] Under state law, "the declared homestead exemption [benefitting joint tenants and tenants by the entirety] shall remain whole and unallocated, provided that the owners together shall not be entitled to a declared homestead exemption in excess of $500,000." Mass. Gen. Laws ch. 188, § 1.

$101,479.68 judicial lien, while leaving at least an additional $81,962.93 in nonexempt equity.[22]
Thus, Mr. Singh's judicial lien does not impair Mr. Pabla's homestead exemption, and I will deny Mr. and Mrs. Pabla's Motion to avoid that judicial lien.

### b.     Judicial Lien Against Mrs. Pabla's Interest

Mr. and Mrs. Pabla seek to avoid a judicial lien of Disaster Associates Inc. d/b/a Servicemaster against Mrs. Pabla's interest in the Somerville Property.   Debtors' Disaster Assocs. Mot., Dkt. No. 48.   The Pablas allege in the Motion that the lien stems from an August 2018 recorded state court writ of attachment in the amount of $3,947.70.[23]   Having applied the § 522(f) formula literally, the Pablas contend that this judicial lien is entirely avoidable.

Given the asymmetry here, however, the proper approach is to apply the alternate formula, which shows that the lien cannot be avoided.   Using the property's fair market value, unavoidable lien total, and exemption amount stated above, and employing the same assumptions (as used in analyzing Mr. Singh's lien), there would be at least $183,442.61 in nonexempt equity remaining as to Mrs. Pabla's interest, after preserving the full $500,000 exemption.   Such nonexempt equity is more than sufficient to allow for Disaster Associates Inc.'s $3,947.70 judicial lien, while leaving at least $179,494.91 in nonexempt equity to spare.   Thus, because

---

[22] Based upon the conclusions above about the other purported judicial liens against Mr. Pabla's interest in the Somerville Property (that Mr. Bhogal's judicial liens did not secure any debt as of the Petition Date and CACH's lien did not reach either of the Pablas' interests in the Somerville Property) those liens have not been considered in the application of the alternate formula.   As indicated above, even if CACH's lien were assumed to have the value stated ($2,795.75) and shown to be against Mr. Pabla's interest in the Somerville Property, the remaining $81,962.93 in nonexempt equity would be available for this lien.

[23] The writ of attachment indicates that a state court lawsuit was filed against both Mr. and Mrs. Pabla, but only Mrs. Pabla's interest "in any and all real estate in the county of Middlesex, in the Southern District thereof" was attached.   See Debtors' Disaster Assocs. Mot. Ex. D.   To the extent that this judicial lien is against Mrs. Pabla's interest in the Lexington Property, it would not be avoidable under § 522(f) because no exemption has been claimed in that property.   Further, confusingly and seemingly erroneously, Mr. and Mrs. Pabla listed this lien on their schedules as against only Mr. Pabla's interest in the Somerville Property.   See Sch. D, Dkt. No. 12; Am. Sch. D, Dkt. No. 17.

15

this judicial lien does not impair the homestead exemption, I will deny Mr. and Mrs. Pabla's Motion to avoid it.

**IV.**     **Conclusion**

For the above reasons, the Motions (Dkt. Nos. 41, 42, 48, 61) will be denied.  Separate orders consistent with this memorandum will be issued.

Dated: September 30, 2021                                     By the Court,

                                                              Christopher J. Panos
                                                              United States Bankruptcy Judge